IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02870-PAB-KLM

BRUCE FALLHOWE AND
RENEE FALLHOWE,

     Plaintiffs,

v.

HILTON WORLDWIDE, INC. and
TERMINIX INTERNATIONAL COMPANY,

     Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss for *Forum Non
Conveniens* [Docket No. 14] filed by defendant Hilton Worldwide, Inc ("Hilton").

On October 21, 2014, plaintiffs Bruce and Renee Fallhowe ("Mr. Fallhowe" and
"Dr. Fallhowe," respectively) commenced this action against defendant Hilton, a Virginia
corporation, and defendant Terminix International Company ("Terminix"), a Tennessee
corporation, asserting claims of negligence and strict liability.  Docket No. 1 at 1, ¶¶ 1-3.
Hilton claims that, given the fact that the injury occurred in Mexico and that all
witnesses are located there, the Court should dismiss the action on *forum non
conveniens* grounds.  Plaintiff responds by pointing out that all defendants are United
States corporations and that all plaintiffs are United States citizens.

## I. BACKGROUND

This action arises from injuries that plaintiffs purportedly suffered during their

stay at the Hilton Los Cabos in Cabo San Lucas, Mexico[1] in November 2013.[2]  *Id.* at 2,

¶ 8.  On the evening of November 24, 2013, plaintiffs awoke to a "heavy, smoky, diesel-

like smell with dense haze" filling the hotel room.  *Id.* at 3, ¶ 10.  Plaintiffs went into the

hall to pull the fire alarm but found that the hallway was clear of smoke.  *Id.* at 3, ¶ 12.

Plaintiffs went to the front desk, and the attendant sent two employees, a maintenance

person and a bellhop, to help them relocate to a different room.  *Id.* at 3, ¶ 13.  During

the time that plaintiffs packed up their items to relocate, Dr. Fallhowe began coughing

and Mr. Fallhowe experienced significant irritation of his sinuses.  *Id.* at 4, ¶ 15.

Plaintiffs spoke to a manager the next day, who informed them that the "employee

room" had been fumigated and that the fumes accidentally entered plaintiffs' room.  *Id.*

at 4, ¶ 16.  Upon returning to the United States, plaintiffs emailed defendant Hilton to

obtain information regarding the fumigant used.  *Id.* at 4, ¶ 17.  Plaintiffs received an

email from defendant Terminix identifying the chemical as Biothrine.  *Id.* at ¶ 18.

Plaintiffs visited Dr. Bruce Suckling, a pulmonologist in Colorado Springs, Colorado.  *Id.*

at 4-5, ¶ 19.  Plaintiffs allege defendants' conduct caused them to sustain injuries

resulting in complications, including reactive airway disease, vocal cord dysfunction,

and pulmonary scarring.  *Id.*

## II.  ANALYSIS

A federal court sitting in diversity applies the federal doctrine of *forum non*

---

[1]Cabo San Lucas is a city located in the Mexican state of Baja California Sur.

[2]The following facts are drawn from plaintiffs' complaint and are assumed to be true for purposes of the present motion.  *See Intercon Inc. v. Bell Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000) (accepting as true the facts alleged in the complaint in deciding motion to dismiss for *forum non conveniens*).

*conveniens* in deciding a motion to dismiss in favor of a foreign forum. *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 992 (10th Cir. 1993). The "doctrine of *forum non conveniens* proceed[s] from [the] premise [that] . . . [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum" when trial in another country would be more appropriate. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (emphasis omitted). "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)) (brackets omitted). The *forum non conveniens* determination is committed to the sound discretion of the trial court, *Piper Aircraft*, 454 U.S. at 257; however, "normally there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum." *Gschwind*, 161 F.3d at 606.

The *forum non conveniens* assessment involves two threshold questions:

> [F]irst, whether there is an adequate alternative forum in which the defendant is amenable to process, and second, whether foreign law applies. If the answer to either of these questions is no, the *forum non conveniens* doctrine is inapplicable. If, however, the answer to both questions is yes, the court goes on to weigh the private and public interests bearing on the *forum non conveniens* decision.

*Id.* at 605-06 (internal citations omitted). The defendant bears the burden of proof on all elements of the *forum non conveniens* analysis. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007).

### A.  *Forum Non Conveniens*: Threshold Determinations

#### 1.  *Availability of Alternative Forum*

The issue of whether an alternative foreign forum exists is a two-part inquiry

involving availability and adequacy.  The availability requirement is ordinarily met when a defendant agrees to be amenable to process in the foreign forum.  *Gschwind*, 161 F.3d at 606 (citing *Piper Aircraft*, 454 U.S. at 254 n.22).  Here, defendant Hilton agrees to submit to Mexico's court system.  Docket No. 14 at 3.  Additionally, defendant Hilton agrees to come back to this District if plaintiffs cannot establish jurisdiction in Mexico. Docket No. 29 at 3-4.

Plaintiffs argue that defendant Terminix has submitted to their chosen forum by filing an answer and has not agreed to be amenable to a Mexican forum.  Docket No. 28 at 3, ¶ 6.  The Court does not find plaintiffs' argument persuasive for three reasons. First, "*forum non conveniens* is a discretionary doctrine which is not waived by a party's failure to raise it in an initial responsive pleading."  *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009).  Second, while defendant Hilton filed the Motion to Dismiss for *forum non conveniens* alone, defendant Terminix raised *forum non conveniens* as an affirmative defense in its answer.  Docket No. 13 at 6.  Third, one defendant's failure in a multi-defendant case to raise a *forum non conveniens* defense does not preclude the district court from dismissing the case on such grounds.  *See Yavuz*, 576 F.3d at 1173-74.

Thus, the Court finds that, because defendants have agreed to be amenable to process in Mexico, *see Gschwind*, 161 F.3d at 606, Mexico is an available forum for this litigation.  Defendants have met their burden as to this element.

### 2.  Adequacy of Alternative Forum

Since the Court finds that Mexico is an available forum for the purposes of this

action, the Court will turn to the issue of its adequacy.  Adequacy does not require that the alternative forum provide the same relief as an American court.  *See Gschwind*, 161 F.3d at 607.  "Instead, the alternative forum is not inadequate unless its remedy is 'so clearly inadequate that it is no remedy at all.'"  *Yavuz*, 576 F.3d at 1174 (citation, quotation, and ellipses omitted).

Plaintiffs assert two causes of action against defendants: negligence and strict liability.  Docket No. 1 at 5-6.  First, plaintiffs argue that Mexican negligence law is not comparable to American law in that Mexican law is much more restrictive.  Docket No. 28 at 5, ¶ 12.  The Court finds plaintiffs' argument unconvincing.  Several courts have found that a negligence claim brought in a Mexican forum is analogous to one brought in the United States in terms of like elements and available defenses.  *See Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999) (discussing contributory negligence as defense to negligence liability under Mexican law); *see also Buettgen v. Volkswagenwerk, A.G.*, 505 F. Supp. 84, 86 (W.D. Mich. 1980) ("Plaintiffs' negligence count is analogous to the Mexican cause of action for 'illicit acts[.]'"), *aff'd*, 701 F.2d 174 (6th Cir. 1982).  Indeed, courts have held that Mexico is an adequate forum for negligence claims despite differences between Mexican and American substantive and procedural tort law.  *See, e.g.*, *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 667 (9th Cir. 2009) (holding that Mexico is an adequate forum for an action arising out of a driving accident in Mexico); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 383 (5th Cir. 2002) (negligence); *Ruelas Aldaba v. Michelin N. Am., Inc.*, 2005 WL 3560587, at *4 (N.D. Cal. Dec. 29, 2005) (personal injury); *Torreblanca de Aguilar v.*

*Boeing Co.*, 806 F. Supp. 139, 145 (E.D. Tex. 1992) (dismissing on *forum non conveniens* grounds a case involving a crash in Mexico of an American-designed and manufactured Boeing 727 aircraft operated by a Mexican airline).

Second, plaintiffs contend that the possibility they may not be able to bring an "objective liability" action[3] against defendant Hilton proves that Mexico is an inadequate forum. Docket No. 28 at 5, ¶ 12. However, the complete absence of a strict liability cause of action does not render a forum inadequate. *See Piper Aircraft*, 454 U.S. at 255 ("Although the relatives of the decedents may not be able to rely on a strict liability theory, . . . there is no danger that they will be deprived of any remedy or treated unfairly."); *Gonzalez*, 301 F.3d at 381 ("[W]e hold that the failure of Mexican law to allow for strict liability on the facts of this case does not render Mexico an inadequate forum."); *Taylor v. Tesco Corp. (US)*, 754 F. Supp. 2d 840, 844-45 (E.D. La. 2010) ("[L]imits on damages or the availability of strict liability do not render a foreign forum inadequate forum even if those limitations render a claim economically nonviable."). Moreover, plaintiffs do not establish that an objective liability claim would be foreclosed in a Mexican forum. Plaintiffs' expert states that, "if the defendant who was 'making use' of the dangerous mechanism was doing so in the exercise of his functions as an employee, Mexican law would allow for the vicarious liability of the employer." Docket No. 28-1 at 6, § 3.2 ¶ 3 n.1. Plaintiffs' expert recognizes that plaintiffs can bring a claim for objective liability against defendant Terminix and acknowledges the possibility that plaintiffs could bring such a claim against defendant Hilton as well. *Id.* at 6, § 3.2 ¶ 4.

---

[3]Plaintiffs' expert states that Mexico's objective liability action is equivalent to a strict liability claim in the United States. Docket No. 28-1 at 5, § 3.2 ¶ 2.

Third, plaintiffs claim that the maximum size of their potential recovery in Mexico renders the forum inadequate.  Docket No. 28 at 6, ¶ 14.  Plaintiffs' expert states that, in cases involving personal injuries other than death, the law of Baja California Sur allows for the recovery of "material damages," which consists of: (1) indemnification based on minimum wage rates, and (2) reimbursement of medical expenses.  Docket No. 28-1 at 6, § 3.3 ¶ 2.  Indemnification under Mexican law is calculated based on quadrupling the highest daily minimum wage in effect in that state.  *Id.*  Plaintiffs argue their material damage award would thus be capped at $1,680.00.[4]  Docket No. 28 at 6, ¶ 14.  However, plaintiffs' use of this calculation is misleading in several respects.  First, plaintiffs' expert makes explicit that the $1,680 figure is a hypothetical calculation based only on Mr. Fallhowe's indemnification.  Plaintiffs' expert laid out the hypothetical recovery to demonstrate how material damages are calculated under Mexican tort law.  Docket No. 28-1 at 6, § 3.3 ¶ 3.  Plaintiffs' expert did not claim that $1,680.00 reflects the maximum "material damages" recoverable.  *See id.*  Second, this calculation is based on a Mexican court determining Mr. Fallhowe suffered only 30 days of disability.  Plaintiffs claim defendants' conduct caused them injuries, including reactive airway disease, vocal cord dysfunction, and pulmonary scarring.  Docket No. 1 at 5, ¶ 19.  This implies disability to some degree extending beyond 30 days.  Third, plaintiffs do not calculate the potential indemnification Dr. Fallhowe could be awarded under Mexican

---

[4]Plaintiffs' expert states that the highest minimum wage in effect in Baja California Sur is 210.05 pesos, or approximately US$14.00, at an exchange rate of 15 pesos per dollar.  Docket No. 28-1 at 6, § 3.3 ¶ 3.  If, hypothetically, a Mexican court finds Mr. Fallhowe suffered 30 days of disability as a result of defendants' conduct, his indemnification would equal 25,206.00 pesos (210.05 x 4 x 30 = 25,206.00 pesos) or the equivalent of approximately $1,680.00.  *Id.*

law.  Finally, this calculation does not include the second aspect of material damages

plaintiffs' expert laid out: reimbursement of medical expenses incurred as a result of

defendants' conduct.  Docket No. 28-1 at 6, § 3.3 ¶ 2.  Along with the medical injuries

plaintiffs claim to have suffered, plaintiffs note that they saw a pulmonologist.  Docket

No. 1 at 5, ¶ 19.  Plaintiffs, therefore, have additional potential recovery under Mexican

law beyond their maximum allowable indemnification.

Plaintiffs' expert states that plaintiffs could recover "moral damages"[5] under the

law of Baja California Sur as well.  Docket No. 28-1 at 7, § 3.3 ¶¶ 4-5.  Plaintiffs argue,

however, that moral damages do not make Mexico an adequate forum because moral

damages do not encompass pain and suffering and are determined by the Mexican

judge.  Docket No. 28 at 6, ¶ 14.  The fact that a court, and not a jury, determines

"moral damages" does not render the forum inadequate or mean that an award will be

erroneously low.

The Court acknowledges that plaintiffs' potential recovery will be lower in Mexico

than it would be in this District given the availability of "pain and suffering" damages

under American law.  However, while the Court is sympathetic to plaintiffs' position, a

lower potential recovery does not render Mexico an inadequate forum.  *See Piper*

*Aircraft*, 454 U.S. at 255 ("[A]lthough [plaintiffs'] potential damages award may be

smaller, there is no danger that they will be deprived of any remedy or treated

---

[5]Plaintiffs' expert states that moral damages compensate a plaintiff for the "non-physical, intangible injury that a person suffers in his feelings, affections, beliefs, honor, decorum, reputation, privacy, and physical image, or in how he is perceived by others . . . [Moral damages] help alleviate or cure one's moral injury."  Docket No. 28-1 at 7, § 3.3 ¶ 4.

unfairly."); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) (finding Mexico an adequate forum despite "severe damage caps"); *Gonzalez*, 301 F.3d at 380 (same).

Fourth, plaintiffs contend that the cost of litigating the case in Mexico will exceed the maximum potential reward, rendering the case economically unviable. Docket No. 28 at 13, ¶ 32. The Court does not find plaintiffs' argument persuasive. *See, e.g.*, *Gonzalez*, 301 F.3d at 381 (lack of economic viability of case does not render Mexican court inadequate); *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251, 261 (W.D.N.Y. 2009) (same). In *Gonzalez*, 301 F.3d at 380, a wrongful death case, the plaintiff argued that, because Mexican law did not recognize strict liability and capped damages at approximately $2,500, the Mexican courts were inadequate. The Court held that, because the calculation of tort damages is a legitimate policy choice made by Mexico, Mexico was an appropriate forum despite the limits on damages. *Id.* at 381-82. Further, the court noted that allowing economic viability to determine the adequacy of an alternative forum forces the court to draw lines and determine at which point the cap on damages renders a forum inadequate. *Id.* at 383.

Fifth, plaintiffs argue that Mexico's "preemptive jurisdiction" theory would prevent plaintiffs from being able to file their case in Mexico. Docket No. 28 at 3-4, ¶¶ 7-9. Plaintiffs claim that, because they filed their case in this Court, Mexico will no longer accept jurisdiction over the action. *Id.* Plaintiffs have not provided any evidence that Mexican courts will refuse to exercise jurisdiction over this action based on the theory of "preemptive jurisdiction." Plaintiffs instead rely on the Eastern District of Texas' holding

in *Sacks v. Four Seasons Hotel Ltd.*, 2006 WL 783441 (E.D. Tex. Mar. 24, 2006).  In

that case, plaintiffs brought a wrongful death action against a resort in Mexico.  *Id.* at *2.

One of plaintiffs' experts on comparative law explained that "the theory of preemptive

jurisdiction is deeply rooted in Mexican law, and the filing before this [United States]

Court preempts Mexican jurisdiction."  *Id.* at *7.  The court accepted the expert's

testimony.  *See id.*

 Here, plaintiffs' argument is not supported by expert testimony, only by reference

to *Sacks*.  *See* Docket No. 28-1 at 7, § 3.4 ¶¶ 1-3.  Moreover, in rulings after the order

in *Sacks*, courts have discredited both the "preemptive jurisdiction" theory and the

opinions of the two *Sacks* experts who opined on this issue.[6]  In the absence of any

competent evidence stating that a Mexican court would refuse jurisdiction over this

action based on plaintiffs' decision to bring suit in the United States, the Court will not

give plaintiffs' preemptive jurisdiction argument any weight.  Additionally, defendant

Hilton agrees to return to this District in the event Mexico reject jurisdiction.  Docket No.

29 at 3-4.

 In sum, the Court finds that defendants have met their burden and that Mexico

---

 [6]A district court found that one of the experts was the "mastermind" in a scheme
to commit fraud on the United States and Mexican courts and ordered him to pay
$100,000 as a sanction for his fraudulent conduct.  *See In re Bridgestone/Firestone,
Inc. Tires Prods. Liability Litig.*, 470 F. Supp. 2d 931, 933 (S.D. Ind. 2006), *rev'd on
other grounds by Marez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578 (7th
Cir. 2008); *see also Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210-11 (5th Cir.
2010).  As summarized by *Marez*, 533 F.3d at 584, the district court found that, after
plaintiffs' case was dismissed on forum non conveniens grounds, plaintiffs hired the
expert "for the express purpose of filing a deficient complaint in an improper Mexican
court" so that plaintiffs "could present 'proof' to [the Seventh Circuit] that Mexico was
not an available alternative forum."

is an available and adequate alternative forum.

### 3. Applicable Law

Having determined that there is an adequate alternative forum, *Gschwind*, 161 F.3d at 605-06, the Court now turns to the question of whether Mexican or Colorado law will govern this dispute. *Id.* at 608 ("[C]hoice of law is a threshold determination for application of forum non conveniens."). If domestic law is applicable, the *forum non conveniens* doctrine is inapplicable. *Rivendell Forest Prods.*, 2 F.3d at 993 n.4; *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir. 1983). A federal court sitting in diversity applies the choice of law rules of the state in which the district is located. *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1219 (10th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). In this case, therefore, Colorado's choice of law rules apply.

Colorado applies the "most significant relationship" analysis codified at § 145 *et seq.* of the Restatement (Second) of Conflict of Laws (1971). *Boone v. MVM, Inc.*, 572 F.3d 809, 811-12 (10th Cir. 2009) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007) (en banc)); *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012) (citing *Dworak v. Olson Constr. Co.*, 551 P.2d 198, 199 (Colo. 1976) (en banc)); *First Nat'l Bank in Fort Collins v. Rostek*, 514 P.2d 314, 320 (Colo. 1973). A court considers the following contacts in determining which state's law applies to an issue: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws, §§ 6, 145 (1971).  The contact factors are considered in light of the following policy considerations, including:

> [T]he needs of the interstate and international systems, the relevant policies of the forum and other interested states, protection of justified expectations, the basic policies underlying the particular field of law, predictability and uniformity of result, and ease of determination and application of the law to be applied.

*AE*, 168 P.3d at 510 (citing Restatement (Second) of Conflict of Laws, § 6 (1971)); *see also Boone*, 572 F.3d at 812.  "These policy considerations vary in importance and in application depending upon the field of law and the particular issue under consideration."  *Galena Street Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2013 WL 2114372, at *6 (D. Colo. May 15, 2013) (quoting *Sabell v. Pac. Intermountain Express Co.*, 536 P.2d 1160, 1164 (Colo. App. 1975)).  "When, as here, the case involves claims of personal injury, the location of the injury presumptively provides the controlling law unless some other state has a more significant relationship."  *Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1210 (D. Colo. 2010); *see also Boone*, 572 F.3d at 812 n.1 (citing Restatement (Second) of Conflict of Laws, § 146 (1971)).

### a.  Contact Factors

### i.  Locus of the Injury

The place where the injury occurred "effectively creat[es] a presumption that that jurisdiction provides the appropriate law."  *Elvig*, 696 F. Supp. 2d at 1210 (citing *Boone*, 572 F.3d at 812 n.1); *see also* Restatement (Second) Conflict of Laws, § 145, cmt. e

(1971) ("In the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law . . . .).  Both parties agree plaintiffs' injuries occurred while in Cabo San Lucas, Mexico.  Docket No. 1 at 2 ¶ 8.  This provides strong evidence that Mexican law governs.  *See Elvig*, 696 F. Supp. 2d at 1210.

### ii.  Locus of the Allegedly Tortious Conduct

Next the Court determines the place where the conduct allegedly causing the injuries occurred.  Both parties agree defendants' allegedly tortious conduct occurred in Cabo San Lucas, Mexico.  *Id.*

### iii.  Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

Plaintiffs are American citizens and defendants are American corporations doing business in Mexico.  *Id.* at 1, ¶¶ 1-3.  Plaintiffs argue that the fact that the parties to the suit are "American" overcomes the locus of both the injury and tortious conduct being in Mexico.  Docket No. 28 at 8, ¶ 18.  Hilton states, however, that the subject hotel is exclusively managed by Operadora de Hoteles Loreto S. De R.L. d ("Operadora"), a company that is domiciled in Mexico, maintains its principal place of business in Mexico, and is not registered to do business in the United States.  Docket No. 14-1 at 2, ¶ 7.  Since Operadora is not currently a party to this lawsuit, the Court finds that defendant Hilton has not met its burden as to this factor.  Nevertheless, "[t]he residence of the parties is not a particularly significant factor."  *Elvig*, 696 F. Supp. 2d at 1212.

### iv.  Place Where the Relationship, if any, of the Parties is Centered

Plaintiffs argue that, since the Hilton Los Cabos is designed for and caters to largely American tourists, the hotel's location in Mexico is somehow secondary.  Docket No. 28 at 8, ¶ 18.  The Court disagrees.  Mexico has a strong interest in regulating resorts' conduct and ensuring foreign tourists' safety.[7]  An overseas resort, no matter how many American tourists comprise its clientele, is not a jurisdictional enclave.  Although the resort industry is inherently multinational, its location must be given weight in determining the locus of the parties' relationship.  *See Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1377 (S.D. Fla. 2013) (because the key events supporting plaintiff's negligence claim occurred at a Bahamian resort, "the most significant relationship test would likely require the application of Bahamian law.").  Plaintiffs chose to go to defendant Hilton's Cabo San Lucas, Mexico hotel.  Docket No. 1 at 2, ¶ 8.  The locus of both plaintiffs' injury and defendants' allegedly tortious conduct is Mexico.  *Id.*  Plaintiffs did communicate with defendants via e-mail from the United States, but the subject of those e-mails concerned the events relating to plaintiffs' injuries at defendant Hilton's hotel in Mexico.  *Id.* at 4, ¶¶ 17-18.  Thus, the Court finds that defendant Hilton has met

---

[7]Hilton cites to a news article in support of its contention that Mexico has a strong interest in the present action.  Docket No. 14 at 7, 13.  The Court finds the information contained within the article relevant.  In 2012, tourism was Mexico's fifth largest source of revenue, and was "seen [as] taking on more economic importance by the end of 2018 as international visits rise and new infrastructure is built."  Jose Enrique Arrioja, Tourism Seen Jumping to No. 3 Mexico Cash Source by 2018, BloombergBusiness, http://www.bloomberg.com/news/articles/2013-06-25/tourism-seen-jumping-to-mexico-s-3rd-biggest-cash-source-by-2018 (last updated June 24, 2013).  According to a report by JPMorgan Chase & Co., in 2012 tourism generated $12.7 billion in foreign exchange inflows for Mexico.  *Id.*

its burden, and that the center of the parties' relationship supports the application of Mexican tort law.

### b.  Policy Considerations

### i.  Needs of the Interstate and International Systems

Hilton argues that international relations will be facilitated by the application of Mexican law.  Docket No. 14 at 7.  The Court agrees.  The first policy consideration seeks "to further harmonious relations between states and to facilitate commercial intercourse between them."  Restatement (Second) of Conflict of Laws, § 6, cmt. d (1971).  As stated, Mexico has a significant interest in applying its tort law to participants in Mexico's tourism industry.  Applying Colorado law to tort claims that arose and occurred in Mexico undermines Mexico's sovereignty and its ability to regulate its resort industry.  Hilton has met its burden as to this factor.  Thus, the Court finds the application of Mexico's tort law in line with the first policy consideration.

### ii.  Relevant Policies of the Forum and Other Interested States and the Basic Policies Underlying the Particular Field of Law

The Court will consider the relevant policies of the forum and the basic policies underlying the particular field of law together due to their similarities.  Hilton argues that Mexico has a strong interest in protecting the interests of international visitors in order to preserve and strengthen the nation's tourism industry.  Docket No. 14 at 7.  The Court has already acknowledged Mexico's interest in the tourism industry.  Applying Colorado law would usurp the policy choice Mexico made regarding the calculation of tort remedies.  *See, e.g., Gonzalez*, 301 F.3d at 381-82.  The Court is unwilling to do

so.  Hilton has sufficiently demonstrated that these two policy considerations favor the

application of Mexican law.

### iii.  Protection of Justified Expectations

Plaintiffs initiated contact with defendant Hilton and Mexico by traveling to and

staying in defendant Hilton's Cabo San Lucas hotel.  Docket No. 1 at 2, ¶ 8.  Hilton's

Cabo San Lucas hotel is exclusively managed by a Mexican company.  Docket No.14-1

at 2, ¶ 7.  Additionally, plaintiffs signed a document containing a forum selection

clause,[8] foreclosing removal to any jurisdiction outside of the Mexican territory.  *See*

Docket No. 29-1.  While the Court need not go into the validity of the forum selection

clause for the purposes of this factor, the language in the clause provides evidence that

the parties expected to litigate any disputes in Mexico.[9]  Dismissing on *forum non*

*conveniens* grounds would be consistent with the document signed by plaintiffs.  Thus,

the Court finds the application of Mexican tort law is in line with the parties' reasonable

---

[8]The clause states in pertinent part:
Given that this company is Mexican, and offers its services in the Mexican
Republic, the undersigned specifically agrees to submit to the jurisdiction of the
Mexican courts, for any settlement of any dispute relating to the services
provided to guests, expressly waives the right to appeal to another jurisdiction or
competence of courts or authorities outside of the Mexico territory.
Docket No. 29-1 at 1.

[9]Foreign forum selection clauses are prima facie valid and should not be set
aside unless the party challenging enforcement of such a provision can show it is
"'unreasonable' under the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.*, 407
U.S. 1, 10 (1972); *see also Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean
Garden Prods. Inc.*, 320 F. App'x 548, 549 (9th Cir. 2009) (enforcing a forum selection
clause requiring that the parties litigate the dispute in Mexico); *Argueta v. Banco
Mexicano, S.A.*, 87 F.3d 320, 325-27 (9th Cir. 1996) (same); *Crown Beverage Co., Inc.
v. Cerveceria Moctezuma, S.A.*, 663 F.2d 886, 888-89 (9th Cir. 1981) (same).  Thus, it
is reasonable for the parties to expect the enforcement of such provision.

expectations.  Hilton has met its burden as to this factor.

### iv.  Predictability, Uniformity of Result and Ease of Determination and Application of the Law to be Applied

The Court considers factors four and five together.  According to the Restatement, applying the law of the place where the injury occurs is "easy . . . and leads to certainty of result" because "[t]he place of injury is readily ascertainable." Restatement (Second) of Conflict of Laws, § 146, cmt. e (1971).  Allowing personal injury claims that occurred at a foreign resort to be adjudicated under the tort laws of the victim's home state may shift the risk of suffering uncertain and unpredictable results to resort operators.  Applying Mexican law to an injury allegedly caused and suffered in Mexico fosters predictability and uniformity.  The Court finds defendant Hilton has met its burden, and this factor supports the application of Mexican law.

For the aforementioned reasons, the Court finds that Mexican law applies.

### B.  *Forum Non Conveniens*: Private and Public Interest Factors

Since the Court answered both threshold questions in the affirmative, it now weighs the various private and public interests.  *Gschwind*, 161 F.3d at 606.  The private interest factors that a court is to consider are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) the cost of obtaining attendance of willing non-party witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive.  *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The public interest factors that a court is to consider include: (1) administrative difficulties of courts with congested dockets which

can be caused by cases not being filed at their place of origin; (2) the burden of jury

duty on members of a community with no connection to the litigation; (3) the local

interest in having localized controversies decided at home; and (4) the appropriateness

of having diversity cases tried in a forum that is familiar with the governing law.  *Id.*

(citing *Gulf Oil*, 330 U.S. at 508-09).

### 1.  *Private Interests*

### a.  Relative Ease of Access to Sources of Proof

Hilton argues that most, if not all, sources of documentary and testimonial proof

are located in Mexico and that the majority of such proof is in Spanish.  Docket No. 14-

1 at 1, ¶¶ 4-6.  Plaintiffs contend that the actual workers who completed the fumigation

and the hotel staff are not needed because, under strict liability, defendants are

assumed liable.  Docket No. 28 at 11, ¶ 28.  Plaintiffs further assert that plaintiffs, their

doctors, and defendants are all United States citizens.  *Id.* at 8-9, ¶ 20.

However, as defendant Hilton points out, plaintiffs do not bring only a strict

liability claim.  Plaintiffs' first claim for relief alleges defendants' negligence.  Docket No.

1 at 5.  The evidence regarding plaintiffs' negligence claim is overwhelmingly based in

Mexico.  Both the allegedly negligent act and the injury occurred in Mexico.  Docket No.

1 at 2, ¶ 8.  Defendant states that the Hilton Los Cabos' employees and contractors are

in and/or residents of Mexico.  Docket No. 14-1 at 1, ¶ 6.  Thus, it is clear that the

individuals who purportedly failed to exercise reasonable care in the fumigation of the

subject room are important witnesses in any liability determination.[10]  Plaintiffs do state

---

[10]Hilton asserts that the majority of the relevant records are maintained at the
Hilton Los Cabos facility.  Docket No. 14-1 at 1, ¶¶ 4-5.  However, Hilton does not

that the doctors who assessed the extent and cause of their injuries are United States citizens.  Docket No. 1 at 5, ¶ 19.  Plaintiffs note that they have sued United States corporations, but this factor is not persuasive given that key witnesses reside in Mexico. *See Loya*, 583 F.3d at 664-65 (private factors support *forum non conveniens* dismissal although plaintiff had sued American defendants because most witnesses and relevant documentation were located in Cabo San Lucas).

Assuming plaintiffs are able to bring forth an objective liability theory, the evidence regarding plaintiffs' second claim is also based largely in Mexico.  Defendants argue that information regarding the specific type of chemical allegedly used to fumigate the room and the manner in which it was used can only be obtained through individuals and witnesses in Mexico.  Docket No. 14-1 at 1, ¶ 6.  Plaintiffs recognize that even under a strict liability theory, they still must prove that the act was done deliberately and under known conditions.  Docket No. 28 at 11, ¶ 28.  Therefore, defendant Hilton has met its burden, and the Court finds that Mexico is the more convenient forum.

### b.  Availability of Compulsory Process for Compelling Attendance of Witnesses

As previously stated, most of the potential witnesses in this action and the

--------

explain why these records cannot be reviewed in Mexico and shipped, scanned, or faxed to Colorado for trial.  *See Cooksey v. Union Pac. R.R. Co.*, No. 08-cv-00445-KMT-MJW, 2008 WL 4457863, at *3 (D. Colo. Oct. 2, 2008) ("[T]he location of the documentary evidence . . . is of minimal significance."); *Ruelas Aldaba v. Michelin N. Am., Inc.*, 2005 WL 3560587, at *4 (N.D. Cal. Dec. 29, 2005) (quoting *Gemini Capital Grp. v. Yap Fishing Corp.*, 150 F.3d 1088, 1093 (9th Cir. 1998)) ("[F]or documentary evidence, the issue 'is not the importance of the documentary evidence, but . . . its volume . . . .").  Accordingly, the Court does not find that fact persuasive.

company responsible for managing the Hilton Los Cabos are domiciled in Mexico. Plaintiff alleges that "[t]he front desk attendant called for two employees, which appeared to be a bellhop and a maintenance person, to assist the Plaintiffs in moving to another room[]" and that "the bellhop acknowledged there was a problem and said 'there is definitely something wrong' here."  Docket No. 1 at 3, ¶¶ 13-14.  Mexican citizens are beyond the Court's subpoena power.  *See* Fed. R. Civ. P. 45(c).  The many difficulties in obtaining testimony and evidence located in foreign jurisdictions–as shown by defendant Hilton–weigh in favor of dismissal on *forum non conveniens* grounds.

### c.  Cost of Obtaining Attendance of Willing Non-Party Witnesses

Hilton states that it is unclear whether the attendance of any non-party witnesses will be required, but argues that because the Hilton Los Cabos is managed by a Mexican company (Operadora), any employees of said company will likely be residents of Mexico.  Docket No. 14 at 11.  Hilton also notes that any non-party witness is likely to reside in Mexico because the allegedly tortious act and resulting injury occurred in Mexico.  *Id.*  Plaintiffs do not explicitly address this factor but imply that travel and lodging expenses for their treating physicians would be expensive.  Docket No. 28 at 12, ¶ 29.  Hilton has met its burden as to this factor.  The Court finds this factor supports *forum non conveniens* dismissal.

### d.  Possibility of a View of the Premises, If Appropriate

The subject hotel where plaintiffs' claims arose is located in Cabo San Lucas, Mexico.  Docket No. 1 at 2, ¶ 8.  Plaintiffs allege that the "employee room had been fumigated and the fumigation accidentally entered the [plaintiffs'] room."  *Id.* at 4, ¶ 16.

Defendant Hilton states the parties may consult an expert(s) who will speak to the proximity of the employee room being fumigated to the plaintiffs' room and the effect thereof.  Docket No. 14 at 11.  The Court agrees that a view of the premises may be appropriate given plaintiffs' factual allegations, although an investigative firm could provide a report on which any expert opinion could be based.  This factor weighs slightly in favor of *forum non conveniens* dismissal.

### e.  All Other Practical Problems That Make Trial of the Case Easy, Expeditious, and Inexpensive

Hilton states that it may need to bring contribution claims against Mexican third parties, which will most likely include the subject hotel's management company, Operadora.  Hilton states that Operadora is domiciled in Mexico and is not licensed to conduct business in the United States.  Docket No. 14-1 at 2, ¶ 7.  It is unlikely that the Court has personal jurisdiction over Operadora, so this factor also weighs in favor of *forum non conveniens* dismissal.  Hilton has satisfied its burden as to this factor.

### 2.  Public Interests

### a.  Administrative Difficulties of Courts with Congested Dockets Which Can Be Caused by Cases Not Being Filed at Their Place of Origin

The most relevant statistics in evaluating the administrative difficulties of court congestion are the median time from filing to disposition, the median time from filing to trial, pending cases per judge, and the average weighted filings per judge.  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).  Neither party has provided these statistics as they relate to Baja California Sur.  At least one court has noted that Baja California Sur has a congested court docket, but the court ultimately

found that the public interest factors supported *forum non conveniens* dismissal.  *See*

*Loya*, 583 F.3d at 665.  Plaintiffs argue that, although defendant provided the relevant

statistics for the courts of this District, the Court cannot engage in a meaningful

comparison without comparable statistics for Baja California Sur.  Docket No. 28 at 9, ¶

23.  The Court agrees.  *See Emp'rs Mut. Cas.*, 618 F.3d at 1169 (comparing statistics

from current and proposed forums); *Navajo Nation v. Urban Outfitters, Inc.*, 918 F.

Supp. 2d 1245, 1259-60 (D.N.M. 2013) (same).

The Court acknowledges that it is inherently more difficult for an American court

to analyze and apply foreign law.  However, the fact that many potential witnesses only

speak Spanish,  Docket No. 29 at 2, is not a significant difficulty since many

proceedings in this District involve Spanish-speaking parties or witnesses.  The Court

finds defendant Hilton has not satisfied its burden as to this factor and finds it is neutral.

### b.  Burden of Jury Duty on Members of a Community with No Connection to the Litigation

The only connections claimed by plaintiffs are: (1) the defendants are United

States corporations, (2) the plaintiffs are citizens of Colorado, and (3) the Hilton Los

Cabos caters to American tourists.  Docket No. 28 at 8, ¶ 18.  As United States citizens,

jurors have a connection to this litigation.  However, the connection to the United

States, much less Colorado, is minimal at best since Mexican law will govern and the

injuries were allegedly caused and arose in Mexico.  *See Creative Tech., Ltd. v. Aztech*

*Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995) (affirming forum non conveniens

dismissal based in part on potential jurors' lack of interest in a claim by foreign

corporations, finding that the "key interests in this dispute lie with the Singapore

22

corporations, not the American public."); *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 991 (S.D. Tex. 1995) ("Given the lack of interest by Texas in this dispute, no public interest would be served by burdening a Texas jury with a trial concerning events that occurred half a world away."); *Lexington Ins. Co. v. Unionamerica Ins. Co.*, 1987 WL 11684, at *3 (S.D.N.Y. 1987) ("Courts should also consider factors of public interest, including . . . the burden of imposing jury duty on a uninterested public . . . ."). This factor, therefore, supports *forum non conveniens* dismissal as defendant Hilton has met its burden.

### c.  Local Interest in Having Localized Controversies Decided at Home

Plaintiffs claim that their principal contact with defendant Hilton prior to the filing of litigation was a United States citizen, Phil Sanders.  Docket No. 28 at 10, ¶ 25. Plaintiffs also argue that the "every day Mexican citizen" does not have an interest in foreign resorts apart from job opportunities.  *Id.*  Hilton responds that plaintiffs' main liaison was Marco Castellon, a Mexican national who currently resides in Mexico and is no longer employed at Hilton Los Cabos.  Docket No. 29 at 9.  Hilton also notes that plaintiffs have not brought any claims for relief based on Mr. Sanders' conduct.  *Id.*

As stated above, Colorado has a minimal interest in the present litigation. "Mexico's substantial interest in holding businesses operating in Mexico accountable" and ensuring the safety of foreign tourists favors *forum non conveniens* dismissal given that the crux of plaintiffs' complaint is that defendants, operating in Mexico, caused them injuries.  *Loya*, 583 F.3d at 665.  Mexico has a significant interest in ensuring that foreign resorts comply with Mexican laws in order to protect one of the nation's key

industries.[11]  The Court finds defendant Hilton has met its burden.  This factor supports *forum non conveniens* dismissal.

### d.  Appropriateness of Having Diversity Cases Tried in a Forum That is Familiar with the Governing Law

Because Mexico's tort law governs this litigation, a Mexican court is better suited than an American court to hear this case.  While it is true that federal courts in the United States are equipped to decide questions of foreign law, plaintiffs' objective liability claim is more properly determined by a Mexican court.[12]  The Court finds this factor favors a Mexican forum.

Therefore, having answered the two threshold questions of the *forum non conveniens* analysis in the affirmative, the Court finds that the private and public interest factors, when viewed as a whole, weigh strongly in favor of a Mexican forum for this litigation.  The Court is mindful that plaintiffs' choice of forum is entitled to great deference, *see Gschwind*, 161 F.3d at 606; however, here defendant Hilton overcomes that deference through its showing of the public and private interests served by resolving in Mexico a dispute arising from allegedly tortious conduct and resulting injuries that occurred in Cabo San Lucas.  Thus, dismissal on *forum non conveniens* grounds is appropriate.  The Court grants *forum non conveniens* dismissal conditioned

---

[11]  According to the article cited by Hilton, Docket No. 14 at 7, in 2012 tourism was Mexico's fifth largest source of revenue and was "seen [as] taking on more economic importance by the end of 2018 as international visits rise and new infrastructure is built."  Arrioja*, supra.*

[12]  As stated by plaintiffs' expert, it is unclear whether plaintiffs will be able to bring an objective liability suit against defendant Hilton under a vicarious liability theory.  Docket No. 28-1 at 6, § 3.2 ¶¶ 4-5

on defendant Hilton's consent to having the action reinstated in this District if Mexico refuses jurisdiction.  *See Gschwind*, 161 F.3d at 607.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Hilton Worldwide, Inc.'s Motion to Dismiss for *Forum Non Conveniens* [Docket No. 14] is **GRANTED**.  It is further

**ORDERED** that this case is dismissed in its entirety.

DATED August 28, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge